UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRENT WILLIAM JACOBY, | ) | |
| AIS No. 291560, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-CV-1067-MHT-CSC |
| | ) | |
| OFFICER LANIER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Brent William Jacoby, an inmate incarcerated at the Bibb Correctional Facility located in Brent, Alabama, filed pro se this civil rights action under 42 U.S.C. § 1983 alleging certain violations of his federally protected rights while incarcerated in the Elmore Correctional Facility ("ECF") in Elmore, Alabama. Doc. 1.[1] Plaintiff brings suit against the following ECF employees: (1) Officer Michael Lanier;[2] (2) Officer Guntaye Clay; (3) Sergeant Nicholas Hall; (4) Lieutenant Terrence Calvin; and (5) Captain Charles McKee. *Id*. For relief, Plaintiff seeks monetary damages and injunctive relief. Doc. 1 at 10. Plaintiff also requests a trial by jury on his claims. *Id*.

Pursuant to the Court's orders, Defendants filed an answer, special report and supporting evidentiary material addressing Plaintiff's claims for relief. Docs. 46, 74, 79. The Court

---

[1]     On April 2, 2021, Plaintiff's case was reopened for further proceedings pursuant to the Eleventh Circuit's Per Curium Opinion. *See* Docs. 23, 24.

[2]     In response to the Court's May 14, 2021, Order (Doc. 33), the General Counsel for the Alabama Department of Corrections provided, *in camera*, Defendant Lanier's last known address. Doc. 35. Using the address provided, the Court directed the Clerk to serve, by certified mail, Defendant Lanier. Doc. 36. This Order directed Defendant Lanier to file an answer and written report to Plaintiff's complaint. *Id*. On June 23, 2021, this Order was returned to the Court with the following notation: "Return to Sender, Not Deliverable as Addressed, Unable to Forward." That same day, the Court directed the United States Marshals Service to "make a 'reasonable effort' to locate [Defendant] Lanier . . ." Doc. 42. While the U.S. Marshals Service attempted service, they were unable to locate Defendant Lanier. Docs. 43, 48. Because the U.S. Marshals Service was unable to locate or serve Defendant Lanier, on August 9, 2021, the Court directed Plaintiff to provide Defendant Lanier's address. Doc. 49. The Court cited to Rule 4(m) and warned Plaintiff, if he failed to comply with the Court's Order, Defendant Lanier could not be served and would not be a party to this cause of action. *Id*. As of the date of this recommendation, Plaintiff has failed to provide an accurate service address for Defendant Lanier. The Court, therefore, recommends dismissing Defendant Lanier from this case, without prejudice, pursuant to Fed. R. Civ. P. 4(m).

subsequently informed Plaintiff that Defendants' special report, as supplemented, may, at any time, be treated as a motion for summary judgment, and the Court explained to Plaintiff the proper manner to respond to a motion for summary judgment.  Doc. 80.  Plaintiff filed his response to Defendants' special report.  Doc. 104.  This case is now pending on Defendants' motion for summary judgment.  Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition, the Court concludes Defendants' motion for summary judgment (Doc. 46), as supplemented, is due to be **GRANTED** in part and **DENIED** in part.

## I.      Standard

To survive the properly supported motion for summary judgment submitted by Defendants, Plaintiff must produce some evidence supporting his constitutional claims.  *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact.  *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  "The leniency the Court must apply does not mean the normal summary judgment standard is discarded; nor can the Court accept factual averments completely unsupported by the record." *Jones v. Wal-Mart Assocs., Inc*., No. 1:19-CV-03705-SDG, 2021 WL 243285, at *2 (N.D. Ga. Jan. 25, 2021) (citing *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) ("Although a *pro se* complaint is entitled to a less strict interpretation, a *pro se* plaintiff is not excused from meeting the essential burden of establishing that there is a genuine issue as to a fact material to his case. When a nonmoving party's response consists of nothing more

than conclusory allegations, summary judgment is not only proper but required.") (citation and punctuation omitted in original); *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) ("[A] *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment."))

Plaintiff has established that there is a genuine issue as to a material fact to preclude summary judgment on his claims of excessive force asserted against Defendants Hall, Calvin, and Clay and his claims of deliberate indifference asserted against Defendants Calvin and Clay.

## II.   **Factual Background**

Plaintiff commenced this pro se action for alleged violations of his federally protected constitutional rights while confined at the ECF. Doc. 1. In his three-count complaint, Plaintiff alleges claims of deliberate indifference, excessive force, and loss of property. *See id*. Plaintiff's claims relate to Defendants' alleged actions from November 20 through November 23, 2019. *Id*.

Plaintiff alleges, on November 20, 2019, when he returned to the ECF from a psychiatric evaluation at the Bullock Correctional Facility ("BCF"), Plaintiff was provided clothes, sheets, and a mattress and was directed to go to B-1 Dorm. *Id*. at 2-3. When Plaintiff left his mattress in the front door entrance of the dorm to retrieve the rest of his property, another inmate stole Plaintiff's mattress. *Id*. at 2. After the mattress went missing, Plaintiff set his property down to use the bathroom and, when Plaintiff returned to where he left his items, his property was gone. *Id*. at 3. Plaintiff admits to "raising hell and screaming" for his mattress and property and concedes that Officer Lanier was able to locate some of Plaintiff's missing property. *Id*. Plaintiff, however, alleges Officer Lanier told Plaintiff he would not receive another mattress or blankets and that Plaintiff would "have to figure it out on [his] own. . . ." *Id*.[3] Defendants deny having any knowledge that Plaintiff's property was stolen or was otherwise denied. Docs. 74-1 at 2, 74-2 at 2, 79-1 at 2, 79-2 at 2.

That same day, Defendant Hall submitted a report detailing an incident involving Plaintiff

---

[3]    Plaintiff further alleges, from November 20 through November 23, 2019, Plaintiff had neither mattress nor blankets. *See* Doc. 1 at 3-4. Plaintiff maintains, for three days, Defendants McKee, Calvin, and Hall denied Plaintiff's request to have his property returned and allowed Plaintiff to run around the ECF in the freezing cold. *Id*. at 4. Plaintiff alleges Defendants' actions resulted in Plaintiff becoming ill with a cold and suffering emotional distress. *Id*. Defendants deny Plaintiff's allegations. Docs. 74-1 at 2, 74-2 at 2, 79-1 at 2, 79-2 at 2.

and Officer Lanier.  Doc. 74-5 at 1.  According to the report, on November 20, Officer Lanier observed Plaintiff yelling at Inmate Thomas and directed Plaintiff to cease his behavior.  *Id*.  When Plaintiff failed to comply and instead, attempted to hit Inmate Thomas, Officer Lanier "yelled gas and dispersed 1 burst of chemical agent to [Plaintiff's] facial area."  *Id*.  While Plaintiff does not dispute his altercation with Inmate Thomas (Doc. 1 at 3), Plaintiff asserts, after Officer Lanier sprayed him, Plaintiff was not thereafter decontaminated or provided medical care.  *Id*. at 9.  Plaintiff maintains Officer Lanier and Defendant Hall left Plaintiff in pain, begging for water, and crying out that he could not breathe.  *Id*.

Prison records show, after the November 20 incident, officers questioned Plaintiff and Inmate Thomas and escorted Plaintiff to the Staton Health Care Unit for a medical assessment.  Doc. 74-5 at 1.  Plaintiff's body chart shows Plaintiff told medical personnel he was sprayed for "wigging [and] hitting folks."  *Id*. at 16.  Medical personnel noted no notable injuries to Plaintiff other than redness to Plaintiff's eyes and a small hand abrasion.  *Id*.

On November 21, ECF medical personnel made a mental health referral for Plaintiff.  Doc. 74-4 at 26.  The next day, Plaintiff was mentally evaluated and deemed competent to participate in a future disciplinary hearing regarding the November 20 incident.  Doc. 74-5 at 5.  Plaintiff alleges, also on this date, in response to his requesting a mattress, Officer Lanier punched Plaintiff.  Doc. 1 at 6-7.  Plaintiff maintains, although he felt that his jaw may be broken from the assault, Plaintiff received no medical treatment.  *Id*. at 7.

Plaintiff alleges, the morning of November 23, Defendants Clay and Hall assaulted him.  Doc. 1 at 7-8.  Plaintiff specifically asserts, in the morning of November 23, "[a]fter being run in and out of the shift office all night and morning long by [Defendant Hall] toying with me, lying to me, making me do sex shows for him on the observation room camera,[4] I was coming inside the shift office door in handcuffs (cuffed behind my back), when [Defendant Hall] greeted me at the door and kick[ed] me so hard that I go flying backward…onto the cement and grass."  *Id*. at 7-8.  Plaintiff maintains that the kick knocked the wind out of him, and that he lay, crying in pain for

---

[4]     Plaintiff specifically alleges, while he was "running around" looking for his personal belongings, Defendant Hall "wanted me to sit with him and flirt with me all night and morning. . . .[Defendant Hall] then tells me to start [stripping] for him on the camera and give him a strip tease and he'll let me go to breakfast.  So I do it!  He never lets me go though.  All he does is run me in and outside the shift office all night while I got nothing on but some [Daisy Dukes]!  He's more focused on gay stuff with me than giving me a place to sleep, bed, clothes, sheets, towels, and my property."  Doc. 1 at 5.

approximately ten minutes. *Id.* at 8. Plaintiff alleges injury to his wrist, chest, and ribs. *Id.* at 8, 10. Defendant Hall denies Plaintiff's allegations. Docs. 74-3 at 1, 79-1 at 2.

Plaintiff further contends, after being kicked by Defendant Hall, Defendant Calvin refused Plaintiff a medical examination and sent Plaintiff to the "back gate receiving area" with Defendant Clay. Doc. 1 at 8. Plaintiff maintains being housed in the back gate receiving area is "illegal" and further alleges Defendants Clay and Calvin refused to provide Plaintiff food. *Id.* Defendant Calvin disputes Plaintiff's recitation of the incident and maintains that he received permission from Correctional Captain Tracy Floyd to lock Plaintiff in the holding cell at the back gate and that Plaintiff was provided an opportunity to eat lunch. Docs. 46-1 at 1.

Defendant Calvin submitted a report on November 23 describing an incident involving Plaintiff. Doc. 46-3 at 2. The report asserts Defendant Clay escorted Plaintiff to the back gate because Plaintiff was disturbing other inmates. *Id.* After placement in the back gate, Defendant Clay observed Plaintiff smearing feces on the cell door and floor. *Id.* Defendant Clay informed Defendant Calvin of the incident and Defendant Calvin directed Plaintiff to clean the feces. *Id.* Plaintiff complied with the order. *Id.* After Plaintiff cleaned the cell, Plaintiff was placed in the back gate holding room where a toilet was available. *Id.* Plaintiff then "pulled down the camera and threw it across the room and began flooding the cell. . . ." *Id.* Defendants Calvin and Clay then placed Plaintiff in a small cell at the back gate where Plaintiff continued to beat on the cell door. *Id.* Defendant Calvin ordered Plaintiff to stop beating the door, but Plaintiff failed to comply. *Id.* Consequently, Defendant Calvin applied a burst of chemical agent to Plaintiff's face. *Id.* Plaintiff was then transported to the Staton Health Care Unit for a medical assessment and at approximately 1:00 p.m., Mental Health Professional, Mr. James Prescott, advised Defendant Calvin that Plaintiff would be placed under medical Observation at the Kilby Correctional Facility ("KCF"). *Id.*[5]

While Plaintiff admits hitting the camera, Plaintiff asserts, after he hit the camera, Defendant Clay entered the holding cell and assaulted Plaintiff. Doc. 1 at 8. Plaintiff maintains Defendant Clay punched and smacked Plaintiff in the head and ribs, while he called Plaintiff a "stupid ass faggott [sic], [and] dumb ass cracker. . . ." *Id.* Plaintiff maintains Defendants Clay

---

[5] Defendants Calvin and Clay's sworn testimony corroborate the November 23 incident report. *See* Docs. 46-1, 74-1 at 1-2, 79-2 at 1-2. Defendant Calvin further asserts Plaintiff was provided an opportunity to eat lunch and denies assaulting Plaintiff. Doc. 74-1 at 1-2.

and Calvin then placed Plaintiff in a smaller cage with no bathroom or food. *Id*. Plaintiff states he defecated "all over the cage" and later, Defendant Calvin entered the cage and sprayed Plaintiff with pepper spray "for no reason." *Id*. Plaintiff alleges, Defendant Calvin did not bring Plaintiff water to decontaminate, and because he is asthmatic, Plaintiff could not breathe. *Id*.

At approximately 2:30 p.m. on November 23, Plaintiff spoke to Mental Health Professional, Mr. James Prescott. Doc. 74-4 at 67. Plaintiff told Mr. Prescott, while he was not suicidal, he needed to be removed from the ECF because officers kept beating Plaintiff and would not allow him to eat. *Id*. Plaintiff explained, because he was not permitted to use the bathroom, he defecated on the cell floor and, because Plaintiff was not permitted to go to pill call, Plaintiff was not taking his Remeron or Prozac. *Id*. Plaintiff told Mr. Prescott he was punched by an officer, sprayed by mace, and did not receive water to decontaminate. *Id*. Mr. Prescott noted that Plaintiff "just returned from [the BCF] after 10 day SW follow up where it was noted on 11/18/19 that he had been smearing feces and urine. Was noted to have done the same today." *Id*.

That same day, Plaintiff was transferred to the KCF where medical personnel evaluated Plaintiff for injury and mental health. Doc. 46-4 at 1. Plaintiff told medical personnel: "I just wanted to get out of there. I wanted to kill someone." *Id*. Medical personnel noted Plaintiff had multiple abrasions and scratches to his right arm, back, left hip, and left leg. *Id*. KCF medical personnel admitted Plaintiff for security watch for mental health observation and placed Plaintiff in a crisis cell. Doc. 74-4 at 4, 62.

On November 23, Plaintiff also signed the following handwritten statement:

I have been denied food since breakfast and lunch today[.] I have not eaten at all period since dinner yesterday. I have been beat up and sprayed for 3 days straight with 6 body charts done on me and sprayed several times with absolutely no decontamination water, shower. I'm so hungry and burning with mace all over me and [Defendants Clay and Calvin] won't feed me or shower me. All [Defendant Clay] has done is get out of camera views and punch on me and slap on me and make me fear my safety and hurt and cry when he does it. I don't feel safe there anymore. [Defendant Hall] has beat me and let someone steal my [property] and wouldn't let me get it back. [Defendant Clay] just made me leave my hygiene products and ID Card at [ECF] instead of bringing it here to shower their mace off me. I'm losing my mind and feel like killing one of these 3 officers. – So instead I'll just go to suicide myself and kill myself instead so I can somehow eat, shower, and get sleep. I have been denied clothes[,] mattress[,] and sheets for 4 days[.] I'm tired. I need a break[.] I lost everything. I can't even write the Courts for my cases. Please feed and shower me.

*Id*. at 66.  KCF medical staff noted in Plaintiff's medical records that his "Assessment of Current Risk" was high because Plaintiff was homicidal and because he threatened correctional officers. *Id*. at 71.

On November 24, Plaintiff told medical personnel that he was transferred to the KCF to prevent him from killing officers.  *Id*. at 59.  Later that day, Plaintiff told medical personnel:  "I'm tired of talking about killing officers, now [it's] time to fuck em up!"  *Id*. at 60.  Medical personnel noted Plaintiff was "extremely irate."  *Id*.

On November 25, medical personnel prescribed Plaintiff Remeron and Prozac to be taken through December 24, 2019.  *Id*. at 8-9.  Plaintiff remained on "suicide watch" at the KCF for "security issues."  *Id*. at 24.  Plaintiff was permitted to have a suicide smock, mat, blanket, and daily meals with a spork.  *Id*. at 54.  Plaintiff told KCF medical personnel, while confined at the ECF, Plaintiff had an altercation with other inmates and correctional officers maced Plaintiff.  *Id*. at 57.  Plaintiff further explained that he was frustrated with the officers, and he threatened them. *Id*.

On November 26, medical personnel treated Plaintiff during a "sick call."  *Id*. at 11. Plaintiff remained housed in the KCF on "suicide precautions."  *Id*.  Plaintiff told medical personnel that he suffered pain to his rib cage "which [Plaintiff] attribute[d] to an altercation at previous camp."  *Id*.  Medical personnel noted that Plaintiff became "very irate" during the exam, Plaintiff needed to be escorted back to his cell, and that a follow-up may be needed after Plaintiff received x-rays.  *Id*.  Plaintiff received two medical exams on this day.  *Id*. at 38, 40.  Plaintiff's first body chart shows Plaintiff told medical personnel that he was "tired of being beat," and that Plaintiff had abrasions to his hip, back, and arm.  *Id*. at 40.  According to Plaintiff's second medical exam, Plaintiff told KCF medical personnel that he was "beat" up by an officer.  *Id*. at 38. According to Plaintiff's body chart, Plaintiff had a red scratch on his upper chest, and various abrasions and lacerations to his body and face.  *Id*.

The next day, KCF medical personnel assessed Plaintiff as low risk for self-harm or suicide.  *Id*. at 33.

On November 28, Plaintiff told KCF medical personnel that he "came here…to die; I am not eating or drinking."  *Id*. at 30.  Nonetheless, according to Plaintiff's medical records, Plaintiff told medical personnel that he denied any self-injury or suicidal thoughts.  *Id*. at 31.

On November 29, Plaintiff received a mental health evaluation in which he again told KCF

medical personnel that he had no issues and had no thoughts of suicide or self-injury.  *Id*. at 28-29.

On December 2, Defendant McKee submitted an investigative report detailing the findings of an investigation relating to Officer Lanier's use of chemical agent on November 20.  Doc. 74-5 at 3.  Defendant McKee's report concluded no action needed to be taken because Plaintiff admitted to the behavior instigating Officer Lanier's use of force.  *Id*.

On December 3, Plaintiff received an x-ray of his chest and ribs.  Doc. 74-4 at 13.  Pursuant to the radiology report, Plaintiff had "multiple projections of the left ribs.  Acute nondisplaced left posterior 8th and 9th rib fractures." *Id*.  The report's "impression" concluded Plaintiff had "[a]cute, nondisplaced left posterior 8th and 9th rib fractures." *Id*.  A handwritten note on this report suggested a repeat x-ray within 30 days.  *Id*.

The next day, KCF medical personnel treated Plaintiff for his "constant rib/back pain" from an "assault/altercation" which occurred in another camp.  *Id*. at 12.  At this appointment, Plaintiff requested stronger pain medication.  *Id*.  KCF medical personnel prescribed Plaintiff ibuprofen to be taken twice daily as needed, through January 2, 2020.  *Id*. at 7.  Also on this date, Plaintiff was evaluated and deemed mentally competent to participate in future disciplinary hearings relating to the November 23 incident.  Doc. 74-6 at 6.

Plaintiff was transferred from the KCF to the ECF on December 6 and had a body chart performed.  Doc. 79-3 at 23.  Plaintiff told medical personnel that his left ribs "still hurt from [the] 2 weeks ago altercation." *Id*.  Plaintiff's body chart shows no injury, swelling, redness, or bruising. *Id*.  Plaintiff told medical staff that his left ribs hurt from an altercation with "police" which occurred two weeks prior.  *Id*. at 22.  Medical staff noted Plaintiff was previously prescribed ibuprofen through January 2, 2020.  *Id*.

On December 11, a disciplinary hearing was held regarding Plaintiff's "destroying, stealing, disposing, altering, damaging, or selling state/another person's property" on November 23.  Doc. 74-6 at 7.  Plaintiff was found guilty of damaging a camera.  *Id*. at 8.

On December 19, a disciplinary hearing was held regarding the November 20 incident involving Plaintiff and Officer Lanier's use of force.  Doc. 74-5 at 6.  Ultimately, Hearing Officer Defendant Hall, found Plaintiff not guilty on the grounds of a procedural violation.  *Id*. at 7.

On December 20, Plaintiff filed the pending complaint, bringing suit against Defendants for their alleged use of excessive force, deliberate indifference, cruel and unusual punishment, and

failure to return Plaintiff's stolen property.  Doc. 1.

On December 26, a disciplinary hearing was held regarding Plaintiff's failure to obey a direct order of ADOC staff on November 23.  Doc. 74-6 at 13.  Plaintiff was again found not guilty on the grounds of a procedural violation.  *Id*. at 14.

## III.   Discussion[6]

Defendants deny they violated Plaintiff's constitutional rights and argue Plaintiff has failed to state a claim.  Doc. 46 at 3.  Defendants also argue they are entitled to immunity in their official and individual capacities.  *Id*.

### 1.   *Injunctive Relief*

Plaintiff is no longer incarcerated at the ECF.  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *Griffith v. Anderson*, No. 2:07-CV-749-MEF-TFM, 2010 WL 993014, at *4 (M.D. Ala. Feb. 17, 2010), *report and recommendation adopted*, No. 2:07-CV-0749-MEF, 2010 WL 993147 (M.D. Ala. Mar. 16, 2010) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985)) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).  As it is clear from the pleadings and records before the Court that Plaintiff is no longer incarcerated at the ECF, his requests for injunctive relief have been rendered moot.

### 2.   *Sovereign Immunity*

To the extent Plaintiff sues Defendants in their official capacity, they are entitled to sovereign immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted),

---

[6]   Because Defendant Lanier has not been served and is no longer a part of this cause of action, Plaintiff's allegations against Defendant Lanier should be dismissed without prejudice and are, therefore, not addressed in this recommendation.

and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacity.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### 3.     *Qualified Immunity*

Defendants argue, not only do Plaintiff's allegations fail as a matter of law, but they are also entitled to qualified immunity.  Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quotation marks and citation omitted).  To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

Once the Court determines Defendants acted within the course and scope of their discretionary authority when the conduct about which Plaintiff complains occurred, Plaintiff must allege facts that, when read in a light most favorable to him, show Defendants are not entitled to qualified immunity.  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  To satisfy his burden, Plaintiff must show two things:  (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).  "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right.... In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) (citations and quotation marks omitted) (alteration in original).  "Clearly

established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208-09 (11th Cir. 2017) (citations omitted). The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012) (citations and quotation marks omitted).

The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and quotation marks omitted). "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241-42, 129 S.Ct. 808).

### 4.    *Section 1983 Claims*

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

## 5.    *Excessive Force Standard*

The Court construes Plaintiff's complaint to assert excessive force claims against Defendants Hall, Clay, and Calvin.  Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind."  *Id.* (internal quotations omitted).

Regarding the objective component, a plaintiff must show "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  *Id*. (internal quotations omitted).  In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury."  *Id*. at 4.  "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).  The Court, however, further directed that "the relatively modest nature of [an inmate's] alleged injuries will no doubt limit the damages he may recover."  *Id*. at 40.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'  *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: 'the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'  *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).  From consideration of such factors, 'inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'  *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.  "When prison officials maliciously and sadistically use force to cause harm,  . . . contemporary standards of decency always are violated . . . whether or not

significant injury is evident.   Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 559 U.S. at 38 (internal quotations and citation omitted).   Thus, in an excessive force case such as the one at hand, "the core judicial inquiry is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Bowden*, 576 Fed. App'x at 953 (internal quotations and citation omitted).

"In the Eleventh Circuit, the inquiry into whether an individual applied excessive force requires the consideration of five factors: (1) the need for force, (2) the relationship between the need and the force applied, (3) the injury, (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of the facts known to them,' and (5) 'any efforts made to temper the severity of a forceful response.'" *Redmon v. Shropshire*, No. 7:19-CV-125 (WLS), 2022 WL 877497, at *5 (M.D. Ga. Jan. 12, 2022), *report and recommendation adopted*, No. 719CV125WLSTQL, 2022 WL 543003 (M.D. Ga. Feb. 23, 2022) (quoting *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010)).

### Excessive Force:  Defendant Hall

"The Eleventh Circuit has held that '[p]rison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.'" *Id.* (quoting *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990)).   In his sworn complaint, Plaintiff alleges, on the morning of November 23, "[a]fter being run in and out of the shift office all night and morning long by [Defendant Hall] toying with me, lying to me, making me do sex shows for him on the observation room camera, I was coming inside the shift office door in handcuffs (cuffed behind my back), when [Defendant Hall] greeted me at the door and kick[ed] me so hard that I go flying backward…onto the cement and grass." Doc. 1 at 7-8.  Plaintiff maintains that the kick knocked the wind out of him, and that he lay, crying in pain for approximately ten minutes.  *Id.* at 8.  Plaintiff alleges injury to his wrist, chest, and ribs.  *Id.* at 8, 10.  Plaintiff's medical records show, on several occasions, Plaintiff sought treatment for injury to his left ribs.  Doc. 74-4, 12; *see also* Doc. 79-3 at 23.  While Defendant Hall denies the allegations (Doc. 46-2 at 1), Plaintiff's sworn complaint is evidence which creates a genuine dispute of material fact.  *See Redmon*, 2022 WL 877497, at *9 (citing *Wade v. Doe*, 2020 WL 7130791 at *9

(M.D. Ga. 2020) (quoting *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations.")). Accordingly, Defendant Hall is not entitled to summary judgment as a matter of law on this claim.[7]

### Excessive Force:  Defendant Clay

As noted *supra*, "'[p]rison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.'"  *Redmon*, 2022 WL 877497, at *5 (quoting *Bennett*, 898 F.2d 1533).  In his sworn complaint, Plaintiff alleges, on November 23, while housed in the back gate, Plaintiff hit the cell's camera with his shirt.  Doc. 1 at 8.  Plaintiff alleges, "about 20 minutes later," Defendant Clay entered Plaintiff's cell and punched and smacked Plaintiff's head and ribs.  *Id*.  While assaulting Plaintiff, Defendant Clay swore at Plaintiff and called him names.  *Id*.  Plaintiff asserts he begged Defendant Clay to stop the assault.  *Id*.  Plaintiff's medical records show, after the alleged assault, Plaintiff had multiple abrasions and scratches to his right arm, back, left hip, and left leg.  Doc. 46-4 at 1.  Further, as noted above, Plaintiff continued to seek treatment for his left rib pain.  Doc. 74-4, 12; *see also* Doc. 79-3 at 23.  While Defendant Clay denies Plaintiff's allegations (Doc. 79-2 at 2), Plaintiff's sworn complaint is evidence which creates a genuine dispute of material fact.  *See Redmon*, 2022 WL 877497, at *9 (citing *Wade*, 2020 WL 7130791 at *9 (M.D. Ga. 2020) (quoting *Mize*, 93 F.3d at 742)).  Accordingly, Defendant Clay is not entitled to summary judgment as a matter of law on this claim.

---

[7]       Insofar as Plaintiff intended to assert an Eighth Amendment constitutional violation because Defendant Hall allegedly made Plaintiff perform a "strip tease," the Court concludes Plaintiff fails to state a claim upon which relief may be granted.  "To allege a violation of a prisoner's Eighth Amendment rights, a complaint must state facts that establish an objectively serious injury. Assaults that result in only *de minimus* harm do not rise to the level of constitutional infractions unless the behavior of the officer in question can be deemed repugnant to the conscience of mankind." *Washington v. Harris*, 186 F. App'x 865, 866 (11th Cir. 2006) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)) (internal citations and quotations omitted).  Although Plaintiff alleges he was subjected to embarrassment and humiliation, "[t]hese de minimus injuries do not rise to the level of constitutional harms," and the alleged conduct by Defendant Hall, while inappropriate and vulgar, is not repugnant to humanity's conscience.  *See id*.  Moreover, even assuming Defendant Hall's "behavior was sufficiently repugnant to give rise to a constitutional claim, no case law clearly establishes that such conduct violates the Constitution, and thus we cannot say that any reasonable officer would have known of it."  *Id*.

### Excessive Force:  Defendant Calvin

"In general, prison officers are authorized to use force when a prisoner repeatedly fails to obey an order." *Pearson v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) (citing *Danley*, 540 F.3d at 1307).  "Moreover, we have recognized that '[p]epper spray is an accepted non-lethal means of controlling unruly inmates.'" *Id.* (quoting *Danley*, 540 F.3d at 1307).  Pepper spray "is designed to be disabling without causing permanent physical injury and is a reasonable alternative to escalating a physical confrontation.  *Id.* (citing *Danley*, 540 F.3d at 1308).  As such, "'[a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders.'"  *Id.* (quoting *Danley*, 540 F.3d at 1307-08).  "A 'short' burst is around five seconds or less."  *Id.* (quoting *Danley*, 540 F.3d at 1307-08) (collecting cases).

Nonetheless, "[e]ven when an initial use of force is constitutional,…prison officers may still violate the constitution by failing to temper the severity of their forceful response."  *Id.* (citing *Danley*, 540 F.3d at 1308-09).  "For example, subjecting a prisoner to special confinement that causes him to suffer increased effects of environmental conditions—like pepper spray lingering in a small cell or on the inmate—can constitute excessive force."  *Id.* (citing *Danley*, 540 F.3d at 1308-09).  Applying this chemical agent causes "'intense pain, a burning sensation that causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis of the larynx.'"  *Id.* (quoting *Danley*, 540 F.3d at 1309) (citations and internal quotation marks omitted in original).  "[T]he use of pepper spray immediately followed by confinement in a small, poorly ventilated, pepper-spray filled cell, when the inmate is no longer resisting, can constitute excessive force."  *Id.* (citing *Danley*, 540 F.3d at 1309).

In his sworn complaint, Plaintiff alleges, after Defendants Clay and Calvin transferred Plaintiff to a small cage and after Plaintiff defecated in the cell, Defendant Calvin entered his cell and, "for no reason," sprayed Plaintiff with a chemical agent.  Doc. 1 at 8.  While Plaintiff appears to allege only one spray of mace, he asserts he could not breathe, that he was choking, and that he begged for air and water.  *Id.*  Plaintiff further maintains his symptoms were exacerbated because he has asthma.  *Id.*  Plaintiff contends that he was neither decontaminated nor provided any water or shower.  *Id.*  Plaintiff maintains he was "eventually taken to Staton and transferred to [the KCF] on suicide watch later that day around 3:00 p.m."  *Id.* at 8-9.

The record shows at 2:30 p.m. on November 23, Plaintiff told Mr. Prescott he "was sprayed at noon" and still had not been provided any water to decontaminate.  Doc. 74-4 at 67.  Plaintiff's

medical records show Plaintiff received a medical examination at the KCF at 6:25 p.m.  Doc. 74-6 at 3.

Defendant Calvin asserts he sprayed Plaintiff for his failure to comply with an order to stop banging on the cell door and that he sent Plaintiff to the Staton Health Care Unit for a medical assessment.  Doc. 74-1 at 2.  Defendant Calvin further testifies that he has no knowledge of Plaintiff's allegations of being denied water or a shower to decontaminate.  *Id*.

Plaintiff alleges Defendant Calvin sprayed Plaintiff "for no reason," and knowingly left Plaintiff without access to water for, at least, two hours.  Plaintiff alleges he was sprayed at noon and the record reflects Plaintiff first saw medical personnel at 2:30 p.m.  Plaintiff alleges he begged for water and, because he is asthmatic, he could not breathe.  Plaintiff's sworn complaint is evidence which creates a genuine dispute of material fact.  *See Redmon*, 2022 WL 877497, at *9 (citing *Wade*, 2020 WL 7130791 at *9 (M.D. Ga. 2020) (quoting *Mize*, 93 F.3d at 742)).  Accordingly, Defendant Calvin is not entitled to summary judgment as a matter of law on this claim.

### 6.    *Excessive Force and Qualified Immunity*

The Court determined above that Defendants Hall, Calvin, and Clay's conduct here establishes claims for excessive force.  "In the Eleventh Circuit, when a Plaintiff's allegations establish an Eighth Amendment violation such as the use of excessive force, qualified immunity does not attach."  *Herbert v. Miller*, No. CV 619-052, 2022 WL 791928, at *7 (S.D. Ga. Mar. 14, 2022) (citing *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002) ("Having determined that the [defendants'] alleged beating violated [plaintiff's] Eighth Amendment rights, we conclude that no qualified immunity defense was available to the [defendants]"); *see also Ash v. Landrum*, 819 F. App'x 770, 774 (11th Cir. 2020) ("[A]s [plaintiff's] allegations establish an Eighth Amendment violation, we conclude that the district court erred in determining that the [defendants] were entitled to qualified immunity"); *Bowden v. Stokley*, 576 F. App'x 951, 955 (11th Cir. 2014) ("[B]ecause a reasonable jury could find [defendants] violated [plaintiff's] Eighth Amendment rights, [defendants] are not entitled to qualified immunity....[W]here the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate") (citation omitted); *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009), *abrogated on other grounds by Crocker v. Beatty*, 995 F.3d 1232, 1248 (11th Cir. 2021) ("For claims of excessive force in violation of the Eighth ... Amendment [ ]

... a plaintiff can overcome a defense of qualified immunity by showing only the first prong, that his Eighth ... Amendment rights have been violated.... We created this rule because, for an excessive-force violation of the Eighth ... Amendment[ ], the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." (citations and quotations omitted)).   Accordingly, Defendants Hall, Calvin, and Clay are not entitled to qualified immunity on Plaintiff's claims of excessive force.

### 7. Deliberate Indifference Standard

Plaintiff also alleges Defendants Hall, Calvin, and Clay acted deliberately indifferent to his serious medical needs. "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).   To demonstrate a denial of medical care in violation of the Eighth Amendment, Plaintiff must prove both an objective and subjective component.   The objective element requires Plaintiff to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).   A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"   *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).   "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm."   *Id*. (quotation marks and citation omitted).

The subjective component of Plaintiff's medical claim requires that he demonstrate "deliberate indifference" to a serious medical need.   *Farrow*, 320 F.3d at 1243.   Deliberate indifference is shown by establishing that a defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk.   It may be demonstrated by either actual intent or reckless disregard.   *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference."   *Id*. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding a defendant must have actual knowledge of a serious condition, not just knowledge of symptoms,

and ignore known risk to serious condition to warrant finding of deliberate indifference).  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

"Deliberate indifference" also entails more than mere negligence.  *Estelle*, 429 U.S. at 106; *Farmer*, 511 U.S. at 835.

> The Supreme Court clarified the "deliberate indifference" standard in *Farmer* by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970, 128 L.Ed.2d 811. In interpreting *Farmer* and *Estelle*, this Court explained in *McElligott* that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott*, 182 F.3d at 1255; *Taylor*, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

*Farrow*, 320 F.3d at 1245-46.

"Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." *Hill*, 40 F.3d at 1187 (quotation marks and citations omitted).  "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id*.

> The seriousness of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment. Where the delay results in an inmate's suffering a life-long handicap or permanent loss, the medical need is considered serious. An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that [t]he tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay. Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Hill*, 40 F.3d at 1188-89 (quotation marks and citations omitted) (footnotes omitted).  Further,

"whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quotation marks and citation omitted); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (holding that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution).

### *Deliberate Indifference:  Defendant Hall*

In his sworn complaint, Plaintiff alleges, on November 20, after Officer Lanier sprayed Plaintiff with a chemical agent, Defendant Hall failed to provide water to Plaintiff or otherwise allow Plaintiff to decontaminate. Doc. 1 at 9. Plaintiff asserts, Defendant Hall, as shift manager on the evening of November 20, left Plaintiff "burning in pain, [b]egging for water, and [crying] out [that he could not breathe]." *Id*. Plaintiff alleges, while a nurse told Defendant Hall and Officer Lanier he needed to decontaminate, they still refused. *Id*. Defendant Hall testifies that he has never mistreated Plaintiff. Docs. 46-2 at 1, 79-1 at 2.

A review of the record shows, on November 20, at approximately 7:37 p.m., Officer Lanier observed Plaintiff attempting to hit Inmate Thomas. Doc. 74-5 at 6. When Plaintiff failed to adhere to Officer Lanier's order to stop, at approximately 7:40 p.m., Officer Lanier sprayed Plaintiff with one burst of chemical agent. *Id*. at 2. At 8:04 p.m., Plaintiff was escorted to the Staton Health Care Unit for a medical assessment (*id*.) and at 8:31 p.m., Plaintiff was seen and treated by medical personnel. *Id*. at 16. Plaintiff does not dispute the times listed in the prison records or otherwise assert the records are inaccurate.

Plaintiff has presented no evidence to create a genuine issue of disputed fact with respect to the claim that Defendant Hall acted with deliberate indifference to his medical needs. Nothing before the Court indicates that Defendant Hall personally participated in or had any direct involvement with the medical treatment provided to Plaintiff. Additionally, the undisputed evidentiary materials demonstrate that ECF staff promptly escorted Plaintiff to the Staton Health Care Unit shortly after the use of force. As such, medical personnel made all decisions relative to the course of treatment provided to Plaintiff and further establish Defendant Hall had no personal involvement in treating Plaintiff. The law does not impose upon correctional officials a duty to

directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment).

The record is devoid of evidence that Defendant Hall had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff, that Defendant Hall actually drew this inference and thereafter ignored the risk. Plaintiff has therefore failed to establish the requisite element of subjective awareness on the part of Defendant Hall. *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003). Consequently, Defendants' motion for summary judgment is due to be granted on this claim.

### *Deliberate Indifference:  Defendant Calvin*

Plaintiff claims Defendant Calvin acted deliberately indifferent to his serious medical needs when Defendant Calvin failed to provide Plaintiff with necessary medical treatment for the injuries suffered after Defendant Hall's assault. Plaintiff alleges, notwithstanding his cries "for help and a body chart" after being kicked by Defendant Hall, Defendant Calvin "just laugh[ed] at [Plaintiff]" and sent Plaintiff to the back gate with Defendant Clay. Doc. 1 at 8. Plaintiff maintains, while Defendant Calvin witnessed the assault and heard his cries, Defendant Calvin nonetheless refused Plaintiff medical care. *Id*. Defendant Calvin denies having any knowledge of the alleged use of excessive force. *See* Doc. 74-1 at 1 at 2.

According to the unrefuted evidentiary material, on November 23, Plaintiff received a medical exam by KCF medical personnel at 6:25 p.m. Doc. 46-4 at 1. According to Plaintiff's body chart, Plaintiff showed multiple abrasions and scratches on his body. *Id*. Plaintiff's medical records also show Plaintiff complained of and sought treatment for his left rib pain. *See* Doc. 74-4 at 11, 12. While housed at the KCF, Plaintiff also received x-rays of his left ribs and was prescribed ibuprofen. Doc. 74-4 at 13, 79-3 at 22. Pursuant to the radiology report, Plaintiff had "multiple projections of the left ribs. Acute nondisplaced left posterior 8th and 9th rib fractures." *Id*. The report's "impression" concluded Plaintiff had "[a]cute, nondisplaced left posterior 8th and 9th rib fractures." Doc. 74-4 at 13. Plaintiff continued to complain of his rib pain through early December when he returned to the ECF. Doc. 79-3 at 23.

As noted *supra*, for Plaintiff to avoid summary judgment on his deliberate indifference claim, he is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County,* 50 F.3d 1579, 1582 (11th Cir.1995).

Plaintiff states Defendant Calvin refused Plaintiff a medical exam after witnessing Defendant Hall's assault.  Plaintiff alleges he lay crying for ten minutes and he suffered severe injury to his wrist and chest.  Plaintiff further alleges Defendant Calvin laughed at Plaintiff and stated: "I ain't dealing with this shit."  Doc. 1 at 8.  Plaintiff was eventually escorted to the Staton Medical Care Unit for medical treatment and transferred to the KCF for suicide watch.  While Defendant Calvin fails to specifically respond to this allegation, he generally denies having knowledge of any use of force against Plaintiff.

Reading the complaint in the light most favorable to Plaintiff, Defendant Calvin was aware of a risk of serious harm to Plaintiff after witnessing Defendant Hall kick Plaintiff.  Plaintiff contends he lay for approximately ten minutes crying in pain and that Defendant Calvin "just laugh[ed]" at him.  Plaintiff further contends that Defendant Calvin knew that Plaintiff was suffering from various injuries because he claims Defendant Calvin refused his request for medical treatment.  "When [custodial officials] ignore without explanation a prisoner's serious medical condition that is known or obvious to them, the trier of fact my infer deliberate indifference." *Griffith*, 2010 WL 993014, at *10 (quoting *Bozeman v. Orum,* 422 F.3d 1265, 1273 (11th Cir. 2005)) (internal quotation marks and citation omitted).  Plaintiff complains Defendant Calvin did just that.

"With respect to the clearly established right element of a deliberate indifference claim, '[t]his is a case in which general legal principles announced by [Eleventh Circuit] decisions in this area of law are enough to make the right violated clearly established.'" *Id*. at *11 (quoting *Danley,* 540 F.3d at 1313).

As previously determined, Plaintiff alleges both a serious medical need and the deliberate indifference of Defendant Calvin to this need.  The allegations in his complaint are that Defendant Calvin took no measures to remedy the need and ignored Plaintiff's requests for medical treatment. "Our earlier deliberate indifference decisions have stated that when [responsible officials] are aware of serious medical needs they may not ignore them or provide grossly inadequate care. *Bozeman,* 422 F.3d at 1273; *McElligott* [*v. Foley,* 182 F.3d 1248, 1256 (11th Cir. 1999)].  Although

[Plaintiff's] allegations may later turn out to be unfounded, reasonable [officers] would have been aware that the conduct that [Plaintiff] alleges violated his clearly established rights." *Id*. (quoting *Danley,* 540 F.3d at 1313. Defendant Calvin is, therefore, not entitled to qualified immunity on Plaintiff's deliberate indifference claim, and Defendants' motion for summary judgment with respect to this claim is likewise due to be denied.

### Deliberate Indifference: Defendants Calvin and Clay

Plaintiff also alleges, after Defendant Calvin pepper sprayed Plaintiff, Defendants Calvin and Clay refused to provide Plaintiff with water to decontaminate. *Id*. at 8-9. Plaintiff maintains that he begged Defendants Calvin and Clay for water, but they nonetheless failed to provide Plaintiff any water to decontaminate. *Id*. at 9. In response to his plea for water, Plaintiff alleges Defendants Calvin and Clay stated: "No Bitch, Burn Bad Ass, your [sic] a tough guy." *Id*. Plaintiff admits that he was "eventually" taken to the Staton Healthcare Unit for medical treatment and subsequently transferred to the KCF on suicide watch. *Id*. Defendant Calvin denies Plaintiff's allegations and testifies that, after applying the chemical agent, he sent Plaintiff to the Staton Health Care Unit for a medical assessment. Doc. 74-1 at 2. Defendant Calvin denies having any knowledge that Plaintiff was denied medical care or decontamination after being pepper sprayed. *Id*. Defendant Clay also denies Plaintiff's allegations and testifies, after Defendant Calvin sprayed Plaintiff, Plaintiff was transported to the Staton Health Care Unit for medical treatment. Doc. 79-2 at 2.

According to the unrefuted evidentiary material, at 2:30 p.m. on November 23, Plaintiff told Mental Health Professional, Mr. Prescott, that he "was sprayed at noon" and still had not been provided any water to decontaminate. Doc. 74-4 at 67. That same day, at 6:45 p.m., KCF medical personnel examined Plaintiff. Doc. 46-4 at 1. While Plaintiff showed multiple abrasions and scratches on his body, there was no indication of injury or irritation to Plaintiff's eyes. *Id*.

The Eleventh Circuit has held "that exposure to pepper spray without adequate decontamination can constitute a serious medical need." *Barcelona v. Rodriguez*, 847 F. App'x 739, 742 (11th Cir.), *cert. denied*, 142 S. Ct. 183, 211 L. Ed. 2d 74 (2021) (citing *Danley*, 540 F.3d at 1310-11). Indeed, in *McNeeley*, the Eleventh Circuit rejected the defendants' qualified immunity arguments relating to the plaintiff's allegations because the defendants "were on notice that delaying a proper decontamination for over twenty minutes despite complaints about the effects of pepper spray could result in a clearly established constitutional violation." *McNeeley v.*

*Wilson*, 649 F. App'x 717, 723 (11th Cir. 2016).  Defendants Calvin and Clay are, therefore, not entitled to qualified immunity on Plaintiff's deliberate indifference claim, and Defendants' motion for summary judgment with respect to this claim is likewise due to be denied.

### 8.      *Conditions of Confinement*

Plaintiff alleges Defendants McKee, Hall, and Calvin violated his constitutional rights because they refused to replace Plaintiff's bed, sheets, and clothes after other inmates stole his property.  Plaintiff maintains, because these defendants refused to replace his property, Plaintiff was forced to run around for three days in the "freezing cold," and, as a result, Plaintiff became "emotionally distressed" and "got sick with a cold bug."  Doc. 1 at 4.  Plaintiff also alleges constitutional deprivation when Defendants Calvin and Clay denied Plaintiff a toilet and food while he awaited transfer to the Staton Medical Care Unit.

The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement.  The "objective component" of the analysis requires an inmate to demonstrate that the condition about which he complains is sufficiently serious to violate the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Caldwell*, 748 F.3d at 1099. While an inmate "need not await a tragic event" before seeking relief, he must at the very least show that a condition of his confinement "pose[d] an unreasonable risk of serious damage to his future health" or safety.  *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (citation omitted).

The subjective component of the analysis requires the inmate-plaintiff to show the defendant prison officials "acted with a sufficiently culpable state of mind" regarding the condition at issue.  *Hudson*, 503 U.S. at 8 (quotation marks and citation omitted).  The proper standard is that of deliberate indifference, *Wilson v. Seiter*, 501 U.S. 294, 303 (1991), but a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result," *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  Rather, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer,* 511 U.S. at 837-38 (1994); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citation

omitted) (holding that "[p]roof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind. . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (internal quotation marks and citations omitted).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]."  *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted).

Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain.  *Id*. at 346.  Specifically, it is concerned with "deprivations of essential food, medical care, or sanitation" and "other conditions intolerable for prison confinement."  *Id*. at 348 (citation omitted).  Prison conditions which may be "restrictive and even harsh, are part of the penalty that criminal offenders pay for their offenses against society" and, therefore, do not necessarily constitute cruel and unusual punishment within the meaning of the Eighth Amendment.  *Id*.  at 347.  Conditions, however, may not be "barbarous" nor may they contravene society's "evolving standards of decency."  *Id*. at 345-46.  Although "[t]he Constitution 'does not mandate comfortable prisons' . . . neither does it permit inhumane ones[.]"  *Farmer*, 511

U.S. at 832 (quoting *Rhodes*, 452 U.S. at 349). For liability to attach, the challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] future health." *Chandler*, 379 F.3d at 1289-90. Thus, a prisoner's conditions of confinement are subject to constitutional scrutiny. *Helling v. McKinney*, 509 U.S. 25 (1993).

### Conditions Claims: Defendants Hall, McKee, and Calvin

Plaintiff alleges, on November 20, 2019, when he returned to ECF from a psychiatric evaluation at BCF, Plaintiff was provided clothes, sheets, and a bed and was directed to go to B-1 Dorm. Doc. 1 at 2-3. After he left his mattress in the front door entrance of the dorm to retrieve the rest of his property, another inmate stole Plaintiff's mattress. *Id*. at 2. After the mattress went missing, Plaintiff set his property down to use the bathroom and, when Plaintiff returned to where he left his items, his property was gone. *Id*. at 3. Plaintiff alleges he was forced to run around in the "freezing cold" for three days, "begging" Defendants Hall, Calvin, and McKee for his clothes, mattress, and sheets. *Id*. at 4. Plaintiff argues Defendants' actions resulted in Plaintiff becoming ill with a cold and suffering emotional distress. *Id*. Defendants deny having any knowledge that Plaintiff's property was stolen or was otherwise denied. Docs. 74-1 at 2, 74-2 at 2, 79-1 at 2, 79-2 at 2.

To establish his Eighth Amendment inhumane conditions of confinement claim, Plaintiff must prove that temporarily having no clothes and sleeping on an "empty steel bed" with no mattress and no bedding resulted in a denial of the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain and that Defendants Hall, McKee, and Calvin knowingly disregarded the excessive risk to his health or safety created by such a deprivation. *Farmer,* 511 U.S. at 834, 837.

As noted above, to state a claim of constitutional proportion, Plaintiff must allege conduct that was "extreme." *Chandler*, 379 F.3d at 1289-90. Deprivations of bedding and clean clothing, for short periods of time, have been held not to violate the Eighth Amendment.

"Specifically, courts have ruled that inmates have no absolute right to bedding or clothes under the Eighth Amendment." *Roberts v. Davenport*, No. 414CV01906RDPJHE, 2015 WL 5278377, at *3 (N.D. Ala. Sept. 9, 2015) (citing *Williams v. Delo,* 49 F.3d 442, 446 (8th Cir. 1995) ("there is no absolute Eighth Amendment right not to be put in a cell without clothes or bedding"); *see also Hamilton v. Lyons,* 74 F.3d 99, 106-07 (5th Cir. 1996) (no constitutional violation where inmate was denied sheets and showers (among other things) for a three-day period)); *Trammell v.*

*Keane,* 338 F.3d 155, 158, 163–65 (2d Cir.2003) (Eight Amendment not violated when inmate deprived of clothing, blanket, and mattress for several weeks and toilet paper for more than week as disciplinary measure because discomfort of lacking clothing and bedding did not risk inmate's health and safety)) (internal citations omitted).

"Spending [three] nights on the floor without a mattress does not state an Eighth Amendment violation." *Id*. (citing *Alfred v. Bryant,* 378 Fed. Appx. 977, 979-980 (11th Cir. 2010) (eighteen days without a mattress insufficient for Eighth Amendment violation.) (citing *Hamm,* 774 F.2d at 1569, 1575-76) (ten month period of sleeping on mattress on floor or on eating table does not violate 8th Amendment); *Fischer v. Ellegood,* 238 Fed. Appx. at 433 (stating the Court had "no reason to believe that sleeping on the floor or on unwashed bed linens or being denied showers amounts to either a deprivation of 'essential sanitation' ... or an Eighth Amendment violation in their own right" where duration of deprivations was five days); *Mosley v. Bishop,* 2009 WL 1564778, *5-6 (S.D. Ala. 2009) (sleeping on "cold, raw steel slab" for nine days did not violate constitution).

Here, Plaintiff does not allege any excessive risk from spending three nights without a mattress, additional clothes, or bedding.  Indeed, Plaintiff admitted Officer Lanier was able to locate some of his stolen property on November 20.  Doc. 1 at 3.  While Plaintiff alleges he became ill with a cold (*id*. at 4), Plaintiff does not state whether he developed something more serious with ongoing effects.  Further, nothing in the record shows Plaintiff sought medical treatment for his cold.  Plaintiff also does not assert that he suffered any physical injury due to being forced to sleep on cold steel beds.

"Conditions that are not 'cruel and unusual' under contemporary standards are not unconstitutional.  To the extent that prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Roberts*, 2015 WL 5278377, at *34 (quoting *Rhodes*, 452 U.S. at 347); *see also Alfred,* 378 Fed. Appx. at 980 ("Inmates cannot expect the amenities, conveniences and services of a good hotel") (quoting *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir. 1988)).  "In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration." *Id*. (quoting *DeSpain v. Uphoff,* 264 F.3d 965, 974 (10th Cir. 2001) (internal quotations omitted).

Plaintiff provides neither evidence he suffered an extreme deprivation, nor that Defendants McKee, Calvin, or Hall were deliberately indifferent to his safety.  Plaintiff's allegations that, after inmates allegedly stole his property, Plaintiff was required to "run around" and sleep on a cold steel bed for three nights fail to state an Eighth Amendment violation.  Because Plaintiff failed to allege circumstances that would establish a deprivation of "the minimal civilized measures of life's necessities" or being subjected to a wanton and unnecessary infliction of pain, he has failed to meet the objective component of his Eighth Amendment claim.

Because the Court concludes Plaintiff failed to adequately allege the objective component of this claim, the Court need not address the subjective component.  Defendants McKee, Calvin, and Hall are, therefore, due to be granted summary judgment on this claim.

### Conditions Claims: Defendants Calvin and Clay

Next, Plaintiff alleges, on November 23, while awaiting transfer to the Staton Medical Care Unit, Defendants Clay and Calvin denied Plaintiff food and access to a toilet.  *See* Doc. 1.  Plaintiff alleges, on the morning of November 23, Defendant Calvin directed Defendant Clay to place Plaintiff in the back gate holding area.  *Id*. at 5.  Plaintiff alleges Defendant Clay then refused to provide Plaintiff with breakfast or lunch.  *Id*.  Plaintiff further maintains, because the holding area lacked a toilet, from 11:00 a.m. through 1:00 p.m., Plaintiff urinated and defecated "all over the floor."  *Id*.

Defendant Calvin denies having any knowledge of Plaintiff being denied a bathroom or food.  Doc. 74-1 at 2.  Rather, Defendant Calvin testifies that Plaintiff "was given an opportunity to eat lunch" but that Plaintiff refused "and started smearing feces on his body."  *Id*.  Defendant Calvin further testifies that inmates housed in the back gate "are awaiting transport to Staton Health Care, for medical reasons" and that inmates there "have access to a toilet."  *Id*.  Defendant Clay also testifies Plaintiff had access to a toilet while in the back gate.  Doc. 79-2 at 2.

To establish his Eighth Amendment inhumane conditions of confinement claim, Plaintiff must prove that having no food or toilet for a few hours resulted in a denial of the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain and that Defendants Calvin and Clay knowingly disregarded the excessive risk to his health or safety created by such a deprivation.  *Farmer,* 511 U.S. at 834, 837.

As previously explained, to state a claim of constitutional proportion, Plaintiff must allege conduct that was "extreme."  *Chandler*, 379 F.3d at 1289-90.  Courts, however, have held that

deprivations or delay of food or a toilet, for short periods of time, do not violate the Eighth Amendment. *See Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (Plaintiff failed to allege prison violated his federally protected constitutional rights for routinely depriving Plaintiff of lunch five days per week over five months); *Toenniges v. Ammons*, No. 1:09-CV-165 WLS, 2013 WL 6632134, at *7 (M.D. Ga. Dec. 16, 2013) ("Short meal periods, skipped meals, [or] unpalatable meals,…without more, do not constitute a violation of the Eighth Amendment.") (citing *Chandler,* 379 F.3d at 1295); *Phillips v. Pittman*, No. 1:15-CV-110-WTH-GRJ, 2017 WL 3047839, at *3 (N.D. Fla. Mar. 31, 2017), *report and recommendation adopted sub nom. Phillips v. Keen*, No. 115CV00110WTHGRJ, 2017 WL 3044758 (N.D. Fla. July 18, 2017) (a "temporary denial of access to a toilet, even with frequent urination issues, is not a serious medical need.") (citing *Simpson v. Overton*, 79 Fed. Appx. 117, 120 (6th Cir. 2003) (unpublished); *Jones v. Mathai*, No. 06-11925, 2008 WL 2570776 *14 (E.D. Mich. June 24, 2008)).

Plaintiff provides neither evidence he suffered an extreme deprivation, nor that Defendants Calvin or Clay were deliberately indifferent to his safety. Plaintiff's allegations that, while confined for a few hours on the morning of November 23, awaiting transfer to the Staton Medical Care Unit, he was denied two meals and access to a restroom, fail to state an Eighth Amendment violation. Because Plaintiff has fails to allege, in this isolated, brief incident, circumstances that would establish a deprivation of "the minimal civilized measures of life's necessities" or being subjected to a wanton and unnecessary infliction of pain, he has failed to meet the objective component of his Eighth Amendment claim.

Because the Court concludes Plaintiff failed to adequately allege the objective component of this claim, the Court need not address the subjective component. Defendants Calvin and Clay are, therefore, due to be granted summary judgment on this claim.

### 9.    *Deprivation of Property and Violation of Prison Policy*

Plaintiff appears to also allege Defendants wrongfully confiscated his property and violated prison policy in failing to assure his property was transferred with him. First, to the extent Plaintiff asserts Defendants violated their own policies or administrative regulations, he is entitled to no relief. The law is well-settled that infringements of agency rules, regulations, policies, or procedures do not, without more, amount to constitutional violations. *Fischer v. Ellegood*, 238 F. App'x 428, 431 (11th Cir. 2007) (holding that Plaintiff's claim alleging defendants violated an internal jail policy was insufficient to survive summary judgment); *Sandin v. Conner*, 515 U.S.

472, 484-86 (1995) (noting that prison regulations are "primarily designed to guide correctional officers in the administration of a prison" and "such regulations are not designated to confer [constitutional] rights on inamtes"); *Magluta v. Samples*, 375 F.3d 1269, 1279 n. 7 (11th Cir. 2004) (mere fact governmental agency's regulations or procedures may have been violated does not, standing alone, raise a constitutional issue); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (claim that prison officials have not followed their own policies and procedures does not, without more, amount to a constitutional violation); *United States v. Caceres*, 440 U.S. 741, 751-52 (1979) (mere violations of agency regulations do not raise constitutional questions); *Weatherholt v. Bradley*, 316 F. App'x 300, 303 (4th Cir. 2009) (same).

Next, insofar as Plaintiff alleges Defendants wrongfully confiscated or kept his property, the Due Process Clause protects against the deprivation of property that is done without due process of law.  U.S. Const. amend. XIV, § 1.  "The Due Process Clause, however, is not triggered by the negligent loss of property.  *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986).  Nor does the intentional deprivation of property violate the Due Process Clause as long as the State provides a meaningful post-deprivation remedy.  *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)."  *Dortch v. Hetrick*, No. CV 16-420-CG-N, 2016 WL 6306122, at *2-3 (S.D. Ala. Sept. 27, 2016), *report and recommendation adopted*, No. CV 16-0420-CG-N, 2016 WL 6304441 (S.D. Ala. Oct. 26, 2016).

"A meaningful post-deprivation remedy is provided by Alabama for persons who have suffered a property loss."  *Id*. (citing *Taylor v. Gandy*, 2011 WL 2784597, at *3 (S.D. Ala. 2011)) (unpublished).  "Claims for a property loss incurred at the hands of state agencies or their employees may be presented for compensation to the State Board of Adjustment pursuant to the Alabama Code §§ 41–9–60, et seq., or the state employee may be personally liable to the inmate in an ordinary tort action."  *Id*. (citing *Milton v. Espey*, 356 So.2d 1201, 1203 (Ala. 1978); Ala. Code § 6–5–262 (1993)).  Therefore, Plaintiff had an available post-deprivation remedy available to him which could have adequately compensated him for his alleged loss.  Consequently, Plaintiff's claim for a deprivation of his property does not show that a constitutional violation occurred.  Defendants are due to be granted to summary judgment on Plaintiff's claims of violation of prison policy and failure to return Plaintiff's property.

**IV.    Conclusion**

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.      Defendants' motion for summary judgment (Doc. 46) be **GRANTED** in part and **DENIED** in part as addressed herein.

2.      Plaintiff's claims for injunctive relief be **DENIED** as moot.

3.      Defendants' motion for summary judgment regarding Plaintiff's claims of excessive force lodged against Defendants Hall, Calvin, and Clay in their individual capacity, be **DENIED**.

4.      Defendants' motion for summary judgment regarding Plaintiff's claims of deliberate indifference lodged against Defendants Calvin and Clay in their individual capacity, be **DENIED**.

5.      Defendant Michael Lanier be **DISMISSED** from this case, without prejudice, pursuant to Fed. R. Civ. P. 4(m).

6.      Defendant Charles McKee be **DISMISSED** from this case, with prejudice.

7.      This case be set for a jury trial on Plaintiff's claims of excessive force and deliberate indifference lodged against Defendants Hall, Calvin, and Clay.

It is further

ORDERED that by **November 7, 2022**, the parties may file objections.  Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object.  Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 24th day of October 2022.

 /s/ Charles S. Coody

CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE